Good morning, your honors. I'd like to reserve about three minutes for rebuttal. Okay. Again, she'll warn you but we'll keep asking questions maybe. Okay, thank you. May it please the court. William Capriola for the petitioner in this case. Here the Strickland is the clearly established federal law for purposes of the Edpa in this case. I think everybody understands that. And under Strickland, it's also clear that Strickland only protects strategic choices after a thorough investigation of the facts. And in this case, it doesn't appear as though that happened. Petitioner alleged in his state habeas petition that there was no investigator hired. That was borne out by the transcript at trial that on the, just before the jury was selected, the judge asked the attorney, do you have an investigator? And he said no. He was retained at that point. And then they appointed one, but that was just before the jury came out. Okay. And when I read the record, counselor, and I'm kind of hurrying because you only have 10 minutes, I saw nothing in there about your client's questioning any trial strategy or even questioning what the attorney's trial strategy was. No affidavit, no nothing. Well, I think his challenge to the trial strategy was that he didn't bother investigating the case. Well, did he say anything about, for instance, calling his calling the girlfriend's daughter? Uh, no. But I think if you look at both the verified petition, he said there was no investigator and didn't basically investigate or or try to obtain any witnesses. He talked to his attorney about it. Did my client talk to his attorney about it? We don't know that from the petition itself. No, that's the thing that worried me. I mean, here we are, and I expect you're good counsel. So I expect you looked at this and said, this is something that should have happened. But if he didn't even talk to his attorney about doing it, it's a little difficult. Well, I think we don't know. And I think actually that's but that's the problem. If we don't know, that is the problem. And a couple of things. One, we have a pro se petitioner here. Um, we do have a declaration from the girlfriend's daughter. Um, and that was unsigned, right? No, it was signed. It is signed, and it's notarized. Well, okay, if you look at page, um, if you look, the declaration is if it's dated, it's dated more than four years after the crimes occurred, right? Yes. Yes, because that's when he filed the petition. Um, but under California law, yes, he didn't do the best job of pleading this case. Um, but I believe he did enough to show that we had somebody here who could have been called, who would have given exculpatory evidence. Well, trouble comes in this, um, would the daughter have really incriminated her own mother when her mother took the fifth rather than help? Well, we don't know. But but what they should have done is they should have. I think he pled a prima facie case. They should. He asked for an evidentiary hearing in California. They didn't give it to him. They just basically summarily denied the petition. And that's the problem here is that we do not have enough facts. He pled enough facts. I mean, he's a pro se petitioner. He pleads enough facts to grant the writ. What you should do is then issue in order to show cause order an evidentiary hearing. Maybe she would not have testified against her mother. We don't know. But she did sign a declaration saying that this is what is true. The guns did not belong to Mr Bravo. They, you know, there were. Can you really say that? Because when you're looking at the declaration of the daughter, um, the brother who came in for six months after the arrest, all of these facts that they've brought up are contradictory. One person said that these were guns were being held by for a friend, a friend who they had known since fourth grade. But what's his last name? Oh, I don't know. Then another person testifies four to six months later. Oh, those were the guns that were being held for my brother. Um, everything that the daughter has another contradictory declaration. Everything that has been brought on would be contradictory and could be inculpatory as well. There's no question that these are the facts. And then when you take those facts along with the overwhelming facts of the petitioner in this case and how he acted from the moment the police arrived by not opening the door, standing in the window for 45 minutes, standing right above the safe, which is where the guns were found. Only men's clothing to fit him in the bedroom. Indicia of utility bills are located in the bedroom in the bathroom. Um, it seems it starts getting the point of whether there may have been deficient act on the part of the attorney. But what's the prejudice? I mean, that's the other prong. Where is the prejudice? And would there be a reasonable probability of a different outcome? Had all of that information come in? Seems like it would have confused it more, doesn't it? Well, yes and no. Um, I think, um, I, uh, that if you had interviewed Giovanna, the girlfriend's daughter, and you had had if she would have testified, um, as to what she said in her declaration, you wouldn't have put on the brother who was an awful witness. And there wouldn't been contradictory evidence there. I mean, you would have had a defense. It would have been a better defense than he had a trial. The brother was bad. Um, and so a decent attorney, a competent attorney would not have put on the brother if you had had the girl, the girlfriend's daughter Giovanna. So the reason that I didn't get to where my good colleague is God, which I think is the ultimate question. But the problem that I have is that I have a Strickland analysis and with a business nine zip on the top, uh, saying, you know, come on, this is a double deferential here. We're supposed to be deferential to the lawyer and then we're supposed to be doubly deferential because now the state court makes its determination and we're supposed to be deferential to them. So my worry, and that's why I ask you the questions, the record didn't reflect anything about the client's questioning, any trial strategy with his attorney, didn't say anything about what he did or didn't do. And it's a little unclear what the girlfriend would have said or would not have said given the date of her affidavit, if she signed it at the time and given, I don't know what counsel knew and didn't know. And I know that her mother had said fifth amendment, which is suggesting I don't want to talk about this. It might get me. So then you got the daughter. Yes. So, you know, at that point, given double deference, I'm having a tough time with with the first prong. That's why I wanted you to speak to that. The first prong being being whether there's any problem at all. Well, because the lower court said there was no bad action on the part of the attorney. I'm supposed to give deference to that attorney, his tactical decisions. And then I'm supposed to give deference to that court who looked at it. And I got no case saying they're out to lunch. So then I'm left with saying, nine zip, last time you guys did that. Come on. Yeah, I think under AEDPA, yes, double deferential. However, there's under D2, there's an unreasonable whether whether or not the court's adjudication of the claim was an unreasonable determination of the facts. And under that, the fact-finding process itself can be deficient. And I think that's what happened here. We don't, we can't answer those questions because they didn't bother having an evidentiary hearing. And therefore, it's, I don't think it's doubly deferential because in this case, I think we overcome that because they didn't bother having the evidentiary hearing. And I think that's what needed to happen. Counsel's, Judge Gould. I have a question for you. Can a felon be a felon in possession of a firearm even if the firearm, in fact, is owned by somebody else? So in other words, if the girlfriend owned the guns or some other person owned them, but the felon, Bravo, has access and control over them in connection with his drug dealing, isn't he still liable despite ownership? Yes, under the law, you can, possession and ownership are two different things. But I think if you show ownership, it definitely takes away from the, if it's somebody else's gun and you can say it's somebody else's safe, then it, showing possession would be a lot more difficult. But yes, technically, it's true. Did the daughter in, did the daughter in her affidavit say that, that Bravo never had a firearm? No, she did not. Exploration is not the most well-worded thing in the world, but she said that they weren't his guns. He was convicted for guns that were not his. She didn't use the legally correct terminology, no, they weren't in his possession. They said that they weren't his. So whether that his means ownership or possession, I don't know. It's rather vague. Okay, thank you, counsel. Thank you. Thank you very much. Mr. Snyder. Morning, Your Honors. Counsel, Bob Snyder, Deputy Attorney General for Warden Brown's respondent. May it please the court, two state courts and the district court found no prejudice from counsel's performance. I would submit as well that there was no deficient performance here for two reasons. Number one, counsel made a tactical choice to put on the best witness he had. You know, counsel says today that Jonathan Ortiz was a bad witness. It's easy to say that in hindsight after he's testified and cross-examined. But interestingly, counsel didn't want to put on this witness. His advice was if you and Blanca testified, the jury well may not believe you. You should take the six-year deal that the prosecution is offering you. It's a good deal. Petitioner chose not to do that and he got 25 years to life. But regarding choice of witnesses, which is ultimately a strategic question that counsel faces, I would submit to the court that Ortiz was in fact the best choice and that counsel's performance was not deficient. He established everything that the additional witnesses now claim, that Blanca shared the bedroom, that the guns belonged to Ortiz's friend, that Ortiz asked Blanca to store them, that he put them in the safe two of the time. And most interestingly, and you hardly ever see this, the alibi witness actually went to the police and said those are my guns. And while the jury didn't believe it, that was pretty good defense testimony. Contrast that, if you will, to Giovanna's declaration, which as Judge Smith pointed out, is not signed. At least my copy's not signed. Her name's printed on it and it is so young. She was 14 or 15 at the time that she would have testified and that makes the witness a little bit iffy. But here's the main problem vis-a-vis putting on Giovanna. She contradicted Ortiz as to who owned one of the guns. She contradicted Ortiz as to who stored the guns and most significantly her declaration implicated her mother who invoked and it's not at all clear that this 14 or 15 year old girl would have taken the stand to say, oh, those are my mother's guns, particularly when her mother was declining to take the stand. For habeas purposes, the additional two problems are these. Number one, there's no statement that she wasn't contacted or wasn't asked to testify, nor is there statement that she would have testified. And the reason that's important on 2254E, you don't get to an evidentiary hearing if you fail to develop the factual basis of the claim. And I would submit in response to counsel that if to the extent there aren't enough facts to grant the writ, that simply reflects a failure to meet the burden of proof on the part of petitioner. It's his burden to come forward with facts indicating that evidentiary hearing is warranted. Now, one thing that I talked to counsel about and I'm now going to talk to you about is, of course, my standard of review. I owe double deference in some instances, and that double deference is of some worry to me in this particular case, only because the Court of Appeals decision that I read doesn't talk about reasonable probability. You're referring, Your Honor, to the California Court of Appeals? Right. Yes, there is a difference. It doesn't say anything about reasonable probability. So if I can't figure out that they used the right standard of review, do I do this de novo? If that were the Court's conclusion, the answer would be yes. But I'm going to suggest, if I may, three reasons why the Court needn't undertake de novo review. In Barker v. Fleming, this Court stated in 2005 that the last recent decision adopted or substantially incorporated the reasoning from a previous decision. And as a result, it was appropriate, reasonable for the reviewing court to look at both decisions to fully ascertain the reasoning of the last decision. What I'm suggesting here is that although the Court of Appeal was a little bit loose with its language, the Superior Court, the Los Angeles County Superior Court, reviewing the same petition, albeit in a different proceeding, did articulate very specific reasons. But I guess I'm trying to figure out why, when my standard is that I look at the California Court of Appeal decision, that's the last recent decision, that I should then go to the Superior Court. I don't see any place in there where it incorporates it. Not in its language, Your Honor, but I would submit that the reasoning is the same. You know, this came up, actually, in Woodward v. Visciati in the U.S. Supreme Court in 2005. There was a conflict between the reasonably probable standard and what this Court said misapplied a standard called probable, as opposed to reasonably probable. And the Court concluded, look, shorthand language was used, but we, the Supreme Court, have also used it. And significantly, in the California Court of Appeal, while the language was inapt, the Court did cite the correct standard, which is Strickland. It's the first case cited. So I would submit to the Court that, although the language used was somewhat unfortunate, the correct standard was, in fact, applied. Because they cited Strickland? Yes. And because I think the same case was presented to the Superior Court. Finally, I would submit that we do get to the same result under either expression, that not only is it not a reasonable probability of a different outcome, but, in fact, there could not have been a different outcome, given the conflict in these witnesses. Well, if I don't give deference to the case, to the California Court of Appeal, then I have to really re-examine whether the conduct was outside the range, don't I? Well, yes. The answer is yes. If the Court were not to give deference to the Court of Appeal, notwithstanding my submission, then it would be de novo review on that. But under that standard, I've discussed, I think, the problems with Giovanna's testimony. You know, on the earlier to investigate, Petitioner comes in three years after conviction, and he says on habeas, here's all the witnesses you should have investigated. And yet, all of these witnesses were known to Petitioner. His brother, who did testify, his girlfriend, his girlfriend's son, his girlfriend's two daughters. This isn't a case like digging for eyewitnesses at the scene of a who these people are. These people were all known to Petitioner. And tellingly, what's missing from the submission on habeas is, as Judge Smith pointed out, there's no declaration from Petitioner regarding these missing witnesses. Nothing that says they weren't talked to, that their testimony wasn't considered. And if I might add, there's also no declaration from current counsel, a declaration regarding an inability to get a declaration from trial counsel. Counsel, Judge Gould, with a question for you. Even assuming that we should be reviewing the decision of the California Appellate Court de novo and without deference, there still is a prejudice prong under Strickland. Absolutely. Correct? And I guess I have trouble seeing how there's prejudice here in light of the facts that Judge England mentioned and other facts I've seen in the record, even if we review it de novo. I think that's right, Your Honor. And as this Court has said many times, along with the Supreme Court, either prong, both prongs have to be satisfied to prevail on habeas. The circumstances described by the police at trial are so incriminatory of Petitioner. The safe's in his bedroom. He's standing right next to it. It appears that he's contemplating going out the window. The screen is on the ground, but the officer's in the backyard. He stalls for 45 minutes before surrendering, and most importantly, contrary to the law, he's standing right next to the room. So on the issue of prejudice, I would submit that it wouldn't have made any difference even if this additional witness had testified. Thank you for your argument, Counselor. Thank you both, Counselor. Judge Kuhl, did you have other questions? I did not, but I would appreciate it if we could. I think Appellant used his time, but maybe you could give him 25 or 30 seconds anyway. Thank you, Your Honor. Thank you very much. I anticipated that would be the good presiding judge's idea, and so I was willing to give you 30 seconds. Thank you, Your Honors. And I'll just use 30 seconds. With regard to Giovanna's declaration being unsigned, it is signed. If you look at page 85 of the excerpts of record, her signature is in cursive. The rest of it is in print. Looks like a signature to me. With regard to the fact that Petitioner knew these witnesses, it doesn't matter if he knew these witnesses. Even if he told his attorney about them, his attorney has a duty to go out and investigate. And in his petition, he says that no investigator was hired, and he failed to interview any potential witnesses in the case. So I think he pled that these witnesses were never contacted by the trial counsel. With that, I'll submit, Your Honors. Thank you. Thank you. All right. This is Case 11-457, Bravo v. Grounds, is submitted. We'll now move to Case 13-502-01, USA v. Serrato-Cesario, and that is submitted on the briefs, and therefore we will turn to Case 13-504-04, the USA v. Reyes-Solosa.
judges: England, GOULD, SMITH